UNITED STATES of America, in its own right, and for and on Behalf of the Taos Indian Pueblo, Plaintiff/Appellee,

v.

Henry T. TRUJILLO and Magdalena T. Duran, Defendants/Appellants.

No. 85–1895.

United States Court of Appeals, Tenth Circuit.

Aug. 3, 1988.

Santiago "Jaime" R. Chavez, Lopez, Chavez & Graham, P.C., Taos, N.M. (Timothy Meehan, with him on the brief), for defendants/appellants.

John T. Stahr, Dept. of Justice, Washington, D.C. (F. Henry Habicht II, Asst. Atty. Gen., William L. Lutz, U.S. Atty., Herbert A. Becker, Asst. U.S. Atty. Albuquerque, N.M., Martin W. Matzen and Patrick F. Barry, Dept. of Justice, Washington, D.C., with him on the brief), for plaintiff/appellee.

Before ANDERSON and BARRETT, Circuit Judges, and DUMBAULD,* District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

Henry T. Trujillo and Magdalena T. Duran (Trujillo and Duran), the son and daughter of Sabino Trujillo, appeal a judgment of the district court requiring them to vacate property belonging to the Taos Pueblo and assessing nominal trespass damages against them because of their innocent trespass. This consolidated action was brought in the district court by the United States on its own behalf, and on behalf of the Taos Pueblo Indians. In an amended answer to the complaint, Trujillo and Duran requested that title be quieted in them as the rightful owners of the small strips of contested property. Although they acknowledged at trial that the disputed land was at one time granted to the Taos Pueblo, Trujillo and Duran assert that their predecessors in title met all of the qualifications of the Pueblo Lands Act entitling them to a patent to the property from

* Hon. Edward Dumbauld, U.S. District Judge, Western District of Pennsylvania, sitting by des-   ignation.

the United States. As a result, this appeal, as did the trial below, centers on the disposition by the Pueblo Lands Board of the title claim to Pueblo lands made by Trujillo and Duran's predecessors in interest.

## I.

In 1864, the Taos Pueblo were given a land patent by the United States Government which included the strips of land contested here. For reasons not relevant to our disposition of this appeal, title to parts of the land grants made to the Pueblo Indians of New Mexico, including the Taos Pueblo, became clouded after the 1864 patent. As a result, Congress passed the Pueblo Lands Act of June 7, 1924, 43 Stat. 636, as amended by Act May 31, 1933, 48 Stat. 111, (25 U.S.C. § 331, note). The Act was a legislative attempt "to provide for the final adjudication and settlement of a very complicated and difficult series of conflicting titles affecting lands claimed by the Pueblo Indians of New Mexico." *Mountain States Tel. and Tel. v. Pueblo of Santa Ana*, 472 U.S. 237, 240, 105 S.Ct. 2587, 2589, 86 L.Ed.2d 168 (1985) (quoting S.Rep. No. 492, 68th Cong., 1st Sess., 3 (1924)).

The statute established the Pueblo Lands Board to examine non-Indian claims to Pueblo lands. The duty of the Board was to make a report determining which lands within the original Pueblo land grants still belonged to the Pueblo. Where the three-member Board unanimously determined that Indian title had been extinguished according to the conditions described in the act, it did not include the property in the report, and effectively authorized the issuance of a patent granting the non–Indian claimant a quit-claim deed against the Indians and the United States Government. The act specified that title to Pueblo lands could be extinguished either by proof of adverse possession with color of title from 1902 or without color of title from 1889.

After the Board's report was completed, it became the basis of a quiet title action brought by the United States to quiet title to the remaining property in the Pueblo. If the Board had not unanimously accepted part or all of a claimant's claim against Indian property, he could intervene in the action (if he was not named as a defendant), and was authorized by the statute to raise as a defense to the action either of the two types of adverse possession previously listed.

Trujillo and Duran's predecessors in interest, their father Sabino Trujillo and their uncle Julian Jaramillo, made a claim for property to the Pueblo Lands Board based on a chain of title and possession extending back to 1888. The Board unanimously granted a land exception to Trujillo and Jaramillo consistent with the Joy Survey line. The Joy Survey had been conducted twelve years before the Board hearings and showed no overlap between the deeds on which Trujillo and Jaramillo made their claims and the parcels of land to the north and northeast which are contested here. Thus, when the United States subsequently brought an action to quiet title in the remaining portion of the land grants, Trujillo and Jaramillo were not made defendants in the quiet title action. In 1934, Trujillo and Jaramillo accepted a land patent from the government for their approved exception whose boundaries did not encroach on the land at issue here.

Testimony was admitted at trial that sometime between 1936 and the 1950's, the Pueblos erected a fence close to the property patented to Trujillo and Duran. This fence, however, was not constructed on the Pueblo property line; thus it did not encompass the tracts of land disputed here which were to the north of the Trujillo–Jaramillo patent, and title to which had been quieted in the Pueblos. Further testimony showed that Sabino Trujillo believed that his property ran to this fence, and that in the late 1940's and in 1951, his wife made out two deeds, one to her son Henry Trujillo, the other to her daughter Magdalena Duran, that granted them parts of the property contested here.

Both Trujillo and Duran built homes and other improvements either partially or totally on this disputed property. After a number of years, they were informed by

the Pueblo that they were trespassers and this ejectment action was brought.

At trial, Trujillo and Duran asserted that their predecessors in title had made a claim to the contested tracts before the Pueblo Lands Board, but that the Board, while granting most of their claim, inexplicably denied their claim as to the tracts now contested and subsequently neglected to include their father and uncle as defendants in the quiet title action brought to determine title to the tracts at issue here. They thus argued that they were not bound by the quiet title action, and that because their predecessors otherwise met the requirements for a patent under the Pueblo Lands Act, they are the rightful possessors of the property in question.

The district court rejected those claims finding that no claims were made by Sabino Trujillo or Julian Jaramillo to the contested lands before the Pueblo Lands Board. *See* R.Vol. I at 67. Accordingly, the district court found that the Taos Pueblo owned the property and ordered the defendants to vacate and restore the property as nearly as was practicable and to pay to the Pueblo nominal trespass damages of ten dollars each.[1] *See* R.Vol. I at 75–78. Trujillo and Duran now challenge this outcome on appeal. They argue that the district court's finding that the contested property was never claimed by their predecessor is not supported by substantial evidence and that it was error for the district court to determine that the Taos Pueblo held title to the contested parcels of land.[2] After reviewing the trial record and carefully considering the arguments made on appeal, we affirm the judgment of the district court.

## II.

We can only set aside a factual conclusion of the district court on appeal if we determine that it is clearly erroneous. Fed.R.Civ.P. 52(a); *see Anderson v. City of Bessemer*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *Thompson v. Rockwell Int'l Corp.*, 811 F.2d 1345, 1350 (10th Cir.1987). Trujillo and Duran apparently argue that the determination by the district court that no claim was made to the Pueblo Lands Board for an exception to the contested tracts was clearly erroneous because it is not supported by substantial evidence. Although this seems to confuse two different standards of review in an attempt to shift the burden of proof on appeal, we nonetheless disagree with Trujillo and Duran on either count.

We note initially that the district court's determination is supported by the Joy Survey which predated the Pueblo Lands Act. The survey shows that the boundary of Jaramillo's property, part of which he subsequently sold to his brother-in-law Sabino Trujillo, did not encompass the lands at issue here. This conclusion is further supported by the Attorney General's failure to list Jaramillo or Trujillo as defendants in the subsequent quiet title action. If, as the district court found, the Pueblo Lands Board approved the entire claim presented by Jaramillo and Trujillo, there would have been no further reason for the Attorney

---

1. Originally, the United States brought a cross-appeal challenging the nominal damage awards as being based on an erroneous legal assumption. In its Brief on Appeal, however, the government explicitly drops this cross-appeal. *See* Brief For The Appellee at 3 n. 2.

2. Trujillo and Duran also argue that the district court erred at trial in applying 25 U.S.C. § 194 which specifies that "[i]n all trials about the right of property in which an Indian may be a party on one side, ... the burden of proof shall rest upon the white person, whenever the Indian shall make out a presumption of title in himself...." Trujillo and Duran's argument is apparently that the statute is not applicable if the non-Indian's claim of title pre-exists the date of the statute's passage—1834.

We note initially that Trujillo and Duran cite no case supporting this proposition and that the language of the statute itself appears to be inconsistent with this argument. But, even if we were inclined to accept it, Trujillo and Duran have shown no claim of title earlier than 1888. Although at trial they asserted that their title to the subject tracts descended from the Don Fernando de Taos grant which would have pre-existed the act, the district court explicitly rejected that claim. *See* R.Vol. I at 67. On appeal, Trujillo and Duran have not challenged that finding, and we find no reason in the record to dispute it. Therefore, even if we accepted the argument of Trujillo and Duran, the statute is applicable here.

General to include appellant's predecessors as defendants in a quiet title action that did not concern them. On the other hand, if the Board had denied part of their claim, there would have been reason to name them as defendants. Thus, the failure of the Attorney General to list Appellants' predecessors as defendants in this quiet title action is consistent with the Board granting to Trujillo and Jaramillo their entire claim and inconsistent with Trujillo and Duran's contention that their claim to the contested parcels was denied in part.[3]

Further, despite the clear description of their property claim which was contained in the report of the Pueblo Lands Board Report, Neither Jaramillo nor Trujillo intervened in the quiet title action, as the statute authorized them to do if they disagreed with the determination of the Board. *See* Pueblo Lands Act, 43 Stat. 636 §§ 12, 14 (1924).

Finally, we note that Jaramillo and Trujillo accepted the land patent, based on the description of the property adopted by the Board, which was offered to them by the United States in 1934. When they did so, they foreclosed any opportunity for any subsequent holders to claim that the patent was incorrect even if some evidence might support that contention. As the Supreme Court said in interpreting a land claim challenging a patent description under a similar statutory scheme:

"The patent having been accepted by the patentees, and being uncancelled, the plaintiffs in this action, claiming under the patentees, cannot recover lands not embraced by it, even if such lands are embraced by the lines established by the decree of confirmation—the conclusive presumption being that the patent cor-

rectly locates the lands covered by the confirmed grant."

*Dominguez De Guyer v. Banning*, 167 U.S. 723, 744, 17 S.Ct. 937, 944, 42 L.Ed. 340 (1897).

The only evidence which Trujillo and Duran offer to suggest that their father and uncle did make such a claim before the Lands Board is based on hypothetical geographical constructs which were not clearly presented at trial. Trujillo and Duran claim that given the description on the 1918 deed by which their uncle Julian Jaramillo deeded part of his property to their father Sabino Trujillo, both they and their predecessors must have understood their property to encompass the contested lands, and hence they must have made a claim to those lands before the Pueblo Lands Board.

We note, however, that even the deed in question specifies that the northern boundary of the property (the boundary in question here) was "the land of the Indians." Trujillo and Duran argue, however, that the grant, which was 60 yards wide and 150 yards long, must have run in a north-south direction since land grants in this area were narrow strips perpendicular to the ditch or river. They further argue, based on this original supposition, that on the tract of land given their father by their uncle the distance from the Southern boundary to the fence built by the Pueblos is only 420 feet, or 140 yards. Thus, they conclude, that because the deeded land ran north and south, and because it was 150 yards long and the Pueblo fence is only 140 yards away, the 1918 deed must have included within it the contested lands in this case despite its specification that the northern boundary is the "land of the Indians."[4]

**3.** Trujillo and Duran suggest the only reason why their predecessors were not included as defendants in the quiet title action was because the Pueblo Lands Board and the Attorney General were inexplicably negligent. They, of course, fail to acknowledge the possibility that their predecessors were not named because they made no claim to the tracts in question. According to *Anderson*, 470 U.S. at 574, 105 S.Ct. at 1511 "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (Citations omitted).

**4.** We further note that the 1893 deed by which Jaramillo received the property from A.G. and Frederick Mueller specified the contested northern boundary as "the line of the Pueblo Indians of Taos." The 1888 deed by which the Muellers received this property from Donaciano C. Quesnel and his wife deeds two different parcels of land. The northern boundary of one of those parcels is described as "the line of the Pueblo Indians of Taos." The northern boundary of the other parcel is the "Acequia de los Pandos" (the Pandos ditch). The government convincingly argues that it is the first of these two

Unfortunately, not only do Trujillo and Duran fail to indicate what ditch or river was the basis of their determination that the grant ran in a north-south direction, there is no evidence in the trial record, other than counsel's *ipse dixit*, that indicates that land grants were made in this fashion.[5] Even if land grants ran in this fashion, there was no attempt at trial to place this land grant, or any of its predecessors, in any specific location vis-a-vis the property at issue.

It is only by making such unsupported assumptions that Trujillo and Duran attempt to show that the deed describes the contested property. In comparing such assumptions with the facts which support the finding of the district court we are not "left with a definite and firm conviction that a mistake has been committed." *Anderson*, 470 U.S. at 565, 105 S.Ct. at 1507 (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 394–95, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948)). As we said to a much more timely challenge under the Act,

> "even if we assume that the methods employed by the [Pueblo Lands] board were subject to criticism, in the absence of evidence in opposition to the findings from which the court could have made correct findings, we fail to see how the court could have done otherwise than to confirm and ratify the findings and award made by the board."

*Pueblo De San Juan v. United States*, 47 F.2d 446, 447–48 (10th Cir.), *cert. denied*, 284 U.S. 626, 52 S.Ct. 11, 76 L.Ed. 533 (1931). Because no evidence sufficient to show that the Lands Board erred was presented to the trial court, we accept its conclusion that no claim was ever made by Sabino Trujillo or Julian Jaramillo to the Board for the properties contested here. As a result we find that title to the property in question was quieted in the Taos Pueblo and that Trujillo and Duran have been innocent trespassers on it for approximately the last forty years.[6]

Although we recognize the hardship that this result causes to Trujillo and Duran it is the result required by the Pueblo Lands Act and the policy underlying it. The district court encouraged an accommodation that would provide some degree of relief for the innocent trespassers. *See* R.Vol. II at 5. When no such accommodation could be reached, the district court assessed only nominal trespass damages against Trujillo and Duran. Under the circumstances, we find such minimal damages appropriate. Accordingly, the judgment of the district court is in all respects AFFIRMED.

---

parcel descriptions which is relevant here, Trujillo and Duran, however, claim that it is the second. We note that even if the operative boundary is the "Pandos ditch," Trujillo and Duran have offered no evidence as to the ditch's location. They did show at trial that a ditch, known as the "Acequia Madre" was situated on the contested property but they did not establish that it was the Pandos ditch. In light of the testimony that there were ditches "all over the place" in that particular land tract, *see* R.Vol. V at 69, we are unwilling to assume that the ditch on the contested property was the Pandos ditch.

**5.** On appeal, counsel suggests that this assertion is supported by the Joy Survey. Although there are some descriptions of this survey in the record, the survey itself is not included and there is not a sufficient description on which we could make the assumption desired by counsel.

**6.** The New Mexico adverse possession statute provides no relief to Trujillo and Duran in this situation because after the passage of the Pueblo Lands Act the voluntary or involuntary alienation of Pueblo lands could only occur "if sanctioned by federal law." *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 252, 105 S.Ct. 2587, 2596, 86 L.Ed.2d 168 (1985).